

# United States Bankruptcy Court
## for the District of Oregon

**Thomas M. Renn, Judge**  
Virginia H. Denney, Judicial Assistant  
Howard J. Newman, Law Clerk

405 East Eighth Avenue, Suite 2600  
Eugene, Oregon 97401

(541) 431-4050  
FAX: (541) 431-4047

July 8, 2016

Ms Holly C. Hayman  
1 SW Columbia, Suite 1010  
Portland, OR 97258

Mr. William Randolph Turnbow  
2610 Highland Oaks Drive  
Eugene, OR 97405

RE:     WILLIS, Terry G.; Bankruptcy Case No. 15-60031-tmr7  
         OSC re: Trustee's Motion for Findings of Contempt and for Damages for Violation of the Automatic Stay.

Counsel:

      As you are aware, I convened a hearing on the above-referenced matter on May 10, 2016, after which I gave the Trustee (**Movant**) fourteen (14) days to submit a further memorandum. I reserved the right to rule after Movant's submission. Movant timely submitted a memorandum, supported by Ms Hayman's declaration, which in turn attached supporting exhibits. I have carefully considered the entire record and consider the matter ripe for decision.

      The relevant facts are as follows:

      In June 2014, WBS Excavating, LLC, WBS Ranching, LLC, and Dee Willis (**Respondents**) filed an action against the Debtor herein, Terry G. Willis, in Coos County Circuit Court (**the Coos County Action**), alleging claims for monetary and equitable relief.

      On January 7, 2015, Debtor filed a Chapter 13 petition. The Coos County Action was pending. At the time Debtor owned real property on Sumner Road in Coos Bay (**the Property**). The Property had several liens against it, including a first lien held by Anthony Adamo.

      Respondents each filed proofs of claim in the Chapter 13 case, to which Debtor objected.

      On April 13, 2015, a stipulated order was entered granting Respondents relief from the automatic stay to "complete all aspects" of the Coos County Action but prohibiting enforcement of "any money judgment obtained against the Debtor . . . without further order of this court."

The stipulated order further provided that resolution of Respondents' claims in the bankruptcy case would await completion of the Coos County Action.[1]

After entry of the stipulated order, the Coos County Action was reinstated. The monetary claims therein were tried to a jury in October 2015. Respondents prevailed. Before judgment was entered, however, Debtor moved to convert to Chapter 7. At the time, no Chapter 13 plan had been confirmed, and the Property remained property of the bankruptcy estate. The motion to convert was granted by order entered on November 16, 2015. Movant was appointed Chapter 7 trustee.

On January 6, 2016, a Limited Judgment in Respondents' favor was entered in the Coos County Action. The Limited Judgment contained separate money awards in favor of each Respondent. Debtor is the only judgment debtor named in each of the money awards. The Coos County Circuit Court's register indicates the Limited Judgment "[c]reates [l]ien."

On February 8, 2016, Movant noticed an intent to sell the Property to a third-party. Mr. Adamo objected. The objection was eventually resolved by a stipulated order entered on March 3, 2016, authorizing the sale provided the Adamo claim was paid in full. The sale's closing was scheduled for March 6, 2016. Movant's counsel, at the behest of the title company handling the closing and insuring title, requested that Respondents execute releases of their purported judgment liens on the Property. Although they initially refused to sign, Respondents eventually sent executed releases to the title company, which it received on April 13, 2016. The sale closed on May 13, 2016. Meanwhile, Debtor received his discharge on March 9, 2016.

Discussion:

Movant argues that entry of the Limited Judgment in the Coos County Circuit Court register[2] created a lien against the Property in violation of the automatic stay and that Respondent's failure to timely release or otherwise invalidate the lien likewise violated the stay, all to the bankruptcy estate's damage in the form of increased interest it had to pay to Mr. Adamo, as well as attorney's fees.

---

[1] It is worth noting that no party has taken action to conclude the pending objections to Respondents' claims. A stipulated order allowing the claims in the judgment amounts might be a simple resolution.

[2] The "register" means the record where all documents in a particular case are filed and all judgments are entered. ORS 7.020.

A threshold issue is whether the automatic stay was violated.[3] Movant relies on 11 U.S.C. § 362(a)(4)[4] which prohibits "any act to create . . . any lien against property of the estate."[5] She argues that by operation of Oregon law, when the Limited Judgment was entered, a judgment lien attached to the Property.

The operative statute is ORS 18.150, which provides in pertinent part:

> 1) If a judgment document filed with a court administrator under ORS 18.075(2) includes a money award and complies with ORS 18.042(1) or 18.048(1), the court administrator shall note in the register of a circuit court that the judgment creates a judgment lien
> . . . .
>
> 2) Except as provided in this section, if the court administrator notes in the register that a judgment creates a judgment lien, the judgment has the following effect in the county in which the judgment is entered:
>
>> (a) When the judgment is entered, the judgment lien attaches to all real property <u>of the judgment debtor</u> in the county at that time; and
>>
>> (b) The judgment lien attaches to all real property <u>that the judgment debtor acquires</u> in the county at any time after the judgment is entered and before the judgment lien expires. (Emphasis added).

As the emphasized text indicates, a judgment lien only attaches to the real property "of the judgment debtor," then owned or thereafter acquired, in the county where the judgment is entered.[6] Here, the "judgment debtor" under the Limited Judgment was the Debtor Terry Willis,

---

[3] At the outset, I reject any argument by Respondents that because acts which violate the stay are void, <u>Schwartz v. United States (In re Schwartz)</u>, 954 F.2d 569, 571-572 (9th Cir. 1992), such acts cannot in fact, violate the stay. That the consequence of a stay violation is a legal nullity, does not mean the violation never happened. Nor does it absolve a creditor of its duty to remedy stay violations it brings about. To hold otherwise would completely eviscerate the Code's remedies under 11 U.S.C. §§ 105 and 362(k) for stay violations.

[4] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

[5] Respondents concede the stipulated order granting relief from stay did not permit any liens to attach to the Property.

[6] In limited circumstances, Oregon law acts to void an unrecorded transfer of real property as against the lien of a judgment entered before such transfer is recorded, assuming the judgment

(continued...)

not his Chapter 7 estate. It is uncontested the Property belonged to the Chapter 7 estate.[7] In fact, the present controversy arises in the context of the estate's proposed sale of the Property to a third party. Based on ORS 18.150(2)'s plain language, it would appear no lien attached to the Property, and thus no stay violation occurred.[8]

One case, however, deserves discussion. In Stewart v. Pac. Coast Recovery Serv., Inc. (In re Stewart), 2006 WL 4528532 (Bankr. D. Or. May 18, 2006), a creditor obtained two state court default judgments. After the judgments were signed by the court and filed, but before they were docketed, the judgment debtors filed Chapter 7. At the time they owned a residence. The debtors received their discharge and the residence was abandoned back to them upon case closure. The debtors subsequently filed Chapter 13. The judgment creditor alleged it was secured in the residence. The debtors argued that any asserted liens were void as violative of the stay in the prior Chapter 7 case because the judgments were docketed post-petition.

The court construed ORS 18.150's predecessor, ORS 18.350(1) (2001), which provided that upon docketing of a judgment, the judgment became a lien on all the real property, then owned or thereafter acquired, of the judgment debtor in the county where the judgment was docketed. The court assumed without discussion that § 362(a)(4) applied, even though the debtors were the only parties named as "judgment debtors" in the default judgments. The court then applied the "ministerial act" exception to the stay to validate the judgment liens. Although it did not expressly so state, the court's analysis implied the liens related back to the pre-petition

---

[6](...continued)
creditor had no notice of the transfer. ORS 18.165(1). Respondents do not rely on this statute to establish a judgment lien attached to the Property ahead of the bankruptcy estate's interest, and at first blush, I would agree the statute has no application.

The statute requires a "conveyance" as defined in ORS 18.165(3)(a). Here, it is doubtful the estate obtained its interest in the Property by a "conveyance"; rather it obtained it by operation of law under § 541(a)(1). Second, the statute only applies where the third party's interest is unrecorded at the time the judgment is entered. ORS 18.165(1). Here, aside from obtaining the Property by operation of law, the estate was also vested, under § 544(a)(3), with the rights of a bona fide purchaser with a recorded (i.e., perfected) interest as of the moment the Chapter 13 petition was filed, which predated the judgment's entry. Third, it is clear from the record that Respondents had notice of the bankruptcy, and hence the estate's interest in the Property, when the judgment was entered.

[7]The property was initially brought into the Chapter 13 estate under § 541(a)(1). It never re-vested in the Debtor during the Chapter 13 portion of the case because no plan was confirmed. See § 1327(b). Under § 348(f)(1)(A), it became Chapter 7 estate property upon conversion.

[8]Because it is not argued, I leave open whether entry of the judgment violated § 362(a)(5) – which stays acts to create liens against property of the debtor – as to real property then owned or to be acquired by the Debtor. In any event, the Chapter 7 estate would have no recourse even were there a violation. It is a logical extension of the holding in Mwangi v. Wells Fargo Bank (In re Mwangi), 764 F.3d 1168, 1177 (9th Cir. 2014), that just as a debtor may not sue for stay violations which injure the estate, neither may the estate sue for stay violations which injure the debtor or his property.

period.[9] That perhaps explains why it assumed § 362(a)(4) applied, because if the liens arose pre-petition, the residence, which became estate property upon the Chapter 7's filing, would have been subject to the liens. In any event, Stewart is distinguishable from the case at bar. Here the Limited Judgment had not been signed and filed pre-petition, no party is arguing the ministerial act exception applies, and the Property has not been abandoned.

Movant also argues that Respondents could have easily remedied the problem by signing the tendered releases that would have satisfied the title company. That might be so, but it is not the standard for contempt sanctions. The evidence suggests that the release documents included provisions affecting substantive rights of Respondents beyond the mere release of any lien interest in the Property. Although it appears Respondents could have been more helpful, and ultimately did sign the disputed release documents, that does not make them liable for a stay violation.

In addition, Movant could have taken steps to avoid this problem. A motion to sell free and clear, at a similar cost and time frame, would have resulted in a bankruptcy court order that should have satisfied the title company. Based on the declaration filed as part of her sale notice by Movant, she was aware that the liens against the Property exceeded the sale price. Perhaps the purported title issue did not arise until later, but Movant could have asked the bankruptcy court for assistance at that time. Other reasons caused delays in the closing, and this matter could have been resolved in the interim.

In conclusion, because the Chapter 7 estate was not the judgment debtor under the Limited Judgment, no lien attached to the Property upon the Judgment's entry, and thus no violation of § 362(a)(4) occurred. The Bankruptcy Code imposes no duty on a creditor to correct a non-existent stay violation simply because a title company mistakenly concludes title has been clouded. The Motion for Contempt will be denied and no further action will be taken on the order to show cause. This letter constitutes my findings of fact and conclusions of law under FRBP 7052. A separate order will be entered consistent herewith.

Very truly yours,

THOMAS M. RENN
Bankruptcy Judge

TMR:vhd

cc: Loren Scott, Debtor's Attorney
     Patrick Wade, Attorney for Anthony Adamo

---

[9]The Stewart court noted the Chapter 7 trustee did not attempt to avoid the judgment liens as preferences. Id. at *6. A preference analysis only applies to pre-petition transfers. § 547(b)(4).